**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KELCEY INCE, on behalf of herself and all others similarly situated,

                        Plaintiff,

            - v -

ARON SECURITY INC. d/b/a ARROW SECURITY and MARK BOWEN,

                    Defendants.

Civil Action No.: 25-cv-2467

**COMPLAINT**

*Jury Trial Demanded*

      Plaintiff Kelcey Ince ("Ince"), on her own behalf and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Complaint against Defendant Aron Security Inc. d/b/a Arrow Security ("Arrow Security") and Mark Bowen ("Bowen"), and alleges as follows:

**PRELIMINARY STATEMENT**

      1.     This is an action for sexual assault and battery; gender-motivated violence in violation of the New York City Victims of Gender-Motivated Violence Protection Law (VGMVPL), N.Y.C. Admin. Code § 10-1101 *et seq.*; discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; aiding and abetting in violation of the NYSHRL, N.Y. Exec. Law § 296(6) and the NYCHRL, N.Y.C. Admin. Code § 8-107(6); failure to pay legally required overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and New York Labor Law ("NYLL") § 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2; unlawful deduction of wages in violation of NYLL § 193; untimely payment of wages in violation of NYLL § 191; and retaliation in violation of FLSA, 29

U.S.C. § 215, and NYLL § 215.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

2.      The Court has original jurisdiction over Ince's federal claims pursuant to 28

U.S.C. §§ 1331, 1343.

3.      The Court has supplemental jurisdiction over Ince's state and city law claims

pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they

form part of the same case or controversy.

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391

because a substantial part of the events or omissions giving rise to the claims occurred there.

5.      All conditions precedent to filing the instant action have been fulfilled. On or

about August 7, 2024, Ince submitted a timely Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). On or about February 4, 2025, the EEOC

issued Ince a Notice of Right to Sue, and this action is being brought within 90 days of Ince's

receipt of the Notice of Right to Sue.

6.      Within ten days of the commencement of this action, Ince will provide notice of

this action to the New York City Commission on Human Rights and Corporation counsel,

pursuant to New York City Administrative Code § 8-502(c).

## PARTIES

7.      Plaintiff Ince is a resident of the State of New York and former shift commander

of Arrow Security.

8.      At all relevant times, Ince was an "employee" of Defendant Arrow Security under

all relevant statutes.

9.      Arrow Security is a corporation registered in New York and permitted to do

business in New York.

10.    Arrow Security employed at least 15 employees throughout Ince's employment.

11.    Arrow Security conducted business at JFK Airport, where it employed Ince.

12.    At all relevant times, Defendant Arrow Security was Ince's "employer" under all relevant statutes.

13.    Defendant Bowen was assigned to JFK Airport as an employee of an Arrow Security client.

14.    Upon information and belief, Bowen is a resident of the state of New York.

**FACTUAL BACKGROUND**

15.    Prior to working at Arrow Security, Ince had six years of experience in the security field, including three years of experience as a supervisor.

16.    At all relevant times, Ince possessed Certificates of Fitness for Citywide Fire Guard for Impairment (F-01) and Coordinator of Fire Safety and Alarm Systems in Homeless Shelters (F-80) issued by the Fire Department of New York, and had completed Homeland Security training.

17.    In or about June 2023, Arrow Security offered Ince the position of shift commander.

18.    Ince worked from Arrow Security's JFK Airport location.

19.    On June 2, 2024, Defendant Bowen locked Ince in a room at work and sexually assaulted her.

20.    Bowen entered the room where Ince and a coworker were working.

21.    Bowen told the coworker to leave, took Ince's phone out of her hand, and ended her call.

22.    When Ince's coworker refused to leave, Bowen physically removed her from the room.

23.    Once he and Ince were alone, Bowen locked the door and sexually assaulted her.

24.    Bowen choked and kissed Ince, grabbed her breast and genitals, and put his hands down her pants.

25.    Bowen continued despite Ince attempting to push him off and repeatedly telling him that this wasn't what she wanted and to let go of her.

26.    When Ince ran for the door to try to get away, Bowen caught her, dragged her back into the room, and locked the door again.

27.    Bowen pinned Ince to the door and continued forcefully kissing and groping her.

28.    As Bowen tried to put his hands down Ince's pants again, she was able to get away and ran to the locker room.

29.    Ince immediately called two of her coworkers, told them that Bowen had assaulted her, and asked for help getting out of the building because she was afraid Bowen would come after her.

30.    One of the coworkers she called walked Ince to her car and the other retrieved Ince's belongings and brought them to her car.

31.    On or around June 4, 2024, Ince reported the assault to the police and Arrow Security.

32.    Ince informed Arrow Security that she had reported the assault to the police and provided Arrow Security with pertinent information about the police's investigation, including the assigned detective's contact information.

33.    Arrow Security knew or should have known that Bowen had unsupervised access

to restricted areas of JFK and had previously engaged in harassing conduct, creating a foreseeable risk of assault.

34.    Bowen previously made suggestive comments, stating that he knows Ince wanted him and that he would soon have her, and attempted to assert control over Ince, frequently assigning her staff to posts and giving them orders without her knowledge or consent.

35.    Ince was informed that Arrow Security failed to cooperate with the police's investigation and would not respond to the assigned detective's inquiries.

36.    Arrow Security did not always pay Ince the required overtime rate of pay for the hours she worked in excess of forty per week.

37.    For example, during the pay period of November 6, 2023 to November 12, 2023, Arrow Security paid Ince at an overtime rate of $40.014 per hour for 15.5 overtime hours, though Ince's legally required overtime rate was $40.50, one and a half of her regular pay rate of $27 per hour.

38.    During the pay period of June 24, 2024 to June 30, 2024, Arrow Security paid Ince at an overtime rate of $38.369 per hour for eight overtime hours.

39.    Upon information and belief, Arrow Security did not always pay any of its employees the required overtime rate of pay for the hours they worked in excess of forty per week.

40.    Arrow Security did not compensate Ince for all the shifts she worked following the assault, including for a shift she worked on July 27, 2024.

41.    Upon information and belief, Arrow Security subjected other employees to this practice of unlawfully failing to pay them for hours they worked.

42.    Arrow Security failed to compensate Ince within seven calendar days after the end

of the week in which she earned the wages.

43.    For instance, Arrow Security paid Ince for the hours she worked on June 10, 2024, on August 16, 2024, and on August 2, 2024 for paid time off Ince used on July 19, 2024.

44.    Upon information and belief, Arrow Security subjected other employees to this practice of unlawfully failing to pay them within seven calendar days after the end of the week in which they earned the wages.

45.    In June and July 2024, Ince reported that she was not paid for all her shifts, and other pay related issues, to Arrow Security.

46.    Arrow Security terminated Ince's employment on July 27, 2024, less than two months after she was sexually assaulted at work and less than three weeks after she complained of pay related issues.

## FLSA COLLECTIVE ACTION ALLEGATIONS

47.    Plaintiff brings the First and Second Causes of Action below as collective actions pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b) on behalf of all non-exempt security officers and related staff employed by Arrow Security on or after the date that is three years before the filing of the Complaint in this action through the date of final judgment (the "FLSA Collective Plaintiffs").

48.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to the policy and practice of Arrow Security of willfully failing and refusing to pay them legally required overtime pay and willfully failing and refusing to pay them for hours they worked.

49.    The First and Second Causes of Action are properly brought under and

maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).

50.    The FLSA Collective Plaintiffs are readily ascertainable.

51.    The names and addresses of the FLSA Collective Plaintiffs are readily available from Defendant Arrow Security.

52.    Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last addresses known to Defendant Arrow Security.

## RULE 23 CLASS ALLEGATIONS – NEW YORK LABOR LAW

53.    Plaintiff brings the Fourth, Fifth and Sixth Causes of Action below pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all non-exempt employees who were employed by Arrow Security on or after the date that is six years before the filing of the Complaint in this action (the "Class Period").

54.    All such persons are referred to herein as members of the "Class" or "Class Members."

55.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from records maintained by Arrow Security.

56.    The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from records maintained by Arrow Security.

57.    The names and addresses of the Class Members are readily available from Defendant Arrow Security.

58.    Notice can be provided by means permissible under Rule 23.

59.    The proposed Class is so numerous that joinder of all Class Members would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

60.    Although the precise number of such persons is unknown, and the facts on which

to determine the calculation of that number are presently within the sole control of Arrow Security, upon information and belief, there are more than 50 members of the Class.

61.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

62.     All the Class members were subject to the same corporate policy and practice of Arrow Security, as alleged herein, of failing to pay overtime, unlawful deduction of wages, and untimely payment of wages.

63.     The company-wide policy and practice of Arrow Security complained about herein affected all Class Members similarly.

64.     Plaintiff is able to fairly and adequately represent and protect the interests of the Class and has no interests antagonistic to the Class.

65.     Plaintiffs are represented in this action by attorneys who are experienced and competent in employment litigation and have previously represented plaintiffs in wage and hour cases.

66.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against their employer.

67.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

68.     Because the losses, injuries, and damages suffered by each of the individual Class

Members are small in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class

Members to redress the wrongs done to them.

69.    On the other hand, important public interests will be served by addressing these

claims as a class action.

70.    The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action would

result in a significant saving of these costs.

71.    The issues in this action can be decided by means of common, class-wide proof.

72.    In addition, if appropriate, the Court can, and is empowered to, fashion methods

to efficiently manage this action as a class action.

73.    There are questions of law and fact common to the Class that predominate over

any questions affecting only individual class members.

**<u>FIRST CAUSE OF ACTION</u>**
**(FLSA Overtime Violations)**
***Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs***

74.    Ince, on behalf of herself and all other FLSA Collective Plaintiffs repeats and re-

alleges each allegation of the preceding paragraphs as if fully set forth herein.

75.    At all relevant times, Defendant Arrow Security has been, and continues to be, an

employer engaged in commerce within the meaning of FLSA, 29 U.S.C. § 203.

76.    Throughout the statute of limitations period covered by these claims, Plaintiff and

the other FLSA Collective Plaintiffs at times worked in excess of forty hours per workweek.

77.    At all relevant times, Defendant Arrow Security operated under a policy and

practice of willfully failing and refusing to pay Plaintiff and the FLSA Collective Plaintiffs the

appropriate overtime rate for hours worked in excess of forty hours per workweek.

78.     At all relevant times, Arrow Security willfully, regularly, and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty hours per workweek.

## SECOND CAUSE OF ACTION
### (FLSA Wage Violations)
*Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs Against Defendant Arrow Security*

79.     Ince, on behalf of herself and all other FLSA Collective Plaintiffs repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

80.     At all relevant times, Defendant Arrow Security has been, and continues to be, an employer engaged in commerce within the meaning of FLSA, 29 U.S.C. § 203.

81.     At all relevant times, Defendant Arrow Security operated under a policy and practice of willfully failing and refusing to pay Plaintiff and the FLSA Collective Plaintiffs for hours worked.

82.     At all relevant times, Arrow Security willfully, regularly, and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs for hours worked.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of the FLSA)
*Against Defendant Arrow Security*

83.     Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

84.     At all relevant times, Defendant Arrow Security has been, and continues to be, an employer engaged in commerce within the meaning of FLSA, 29 U.S.C. § 203.

85.     As set forth in detail above, Ince asserted her rights under FLSA when she complained to Arrow Security that she was not paid for hours worked and other pay related

issues.

86.    Defendant Arrow Security, unlawfully and without cause, retaliated against Ince as a direct result of Ince asserting her rights under FLSA, and Ince suffered materially adverse employment actions as a result.

87.    Accordingly, Arrow Security retaliated against Ince in violation of her statutory rights as guaranteed by FLSA.

### FOURTH CAUSE OF ACTION
**(New York Labor Law Overtime Violations)**
***Brought by Plaintiff on Behalf of Herself and the Class Members Against Defendant Arrow Security***

88.    Ince, on behalf of herself and the Class Members, repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

89.    Throughout the Class Period, Defendant Arrow Security willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members at the required overtime rate for hours worked in excess of forty hours per workweek.

### FIFTH CAUSE OF ACTION
**(Unlawful Deduction of Wages in Violation of the New York Labor Law)**
***Brought by Plaintiff on Behalf of Herself and the Class Members Against Defendant Arrow Security***

90.    Ince, on behalf of herself and the Class Members, repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

91.    Throughout the Class Period, Defendant Arrow Security willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members for all hours worked.

### SIXTH CAUSE OF ACTION
**(Untimely Payment of Wages in Violation of the New York Labor Law)**
***Brought by Plaintiff on Behalf of Herself and the Class Members Against Defendant Arrow Security***

92.    Ince, on behalf of herself and the Class Members, repeats and re-alleges each

allegation of the preceding paragraphs as if fully set forth herein.

93.     At all relevant times, Defendant Arrow Security employed Ince and the Class Members as manual workers entitled to weekly pay.

94.     Ince and the Class Members spent at least 25% of their working time performing physical labor.

95.     Throughout the Class Period, Defendant Arrow Security willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members within seven calendar days after the end of the week in which their wages were earned.

**SEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYLL)**
*Against Defendant Arrow Security*

96.     As set forth in detail above, Ince asserted her rights under the NYLL when she complained to Arrow Security that she was not paid for hours worked and other pay related issues.

97.     Defendant Arrow Security, unlawfully and without cause, retaliated against Ince as a direct result of Ince asserting her rights under the NYLL, and Ince suffered materially adverse employment actions as a result.

98.     Accordingly, Arrow Security retaliated against Ince in violation of her statutory rights as guaranteed by the NYLL.

99.     Arrow Security's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to civil penalties.

**EIGHTH CAUSE OF ACTION**
**(Discrimination in Violation of Title VII)**
*Against Defendant Arrow Security*

100.     Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully

set forth herein.

101.    By the actions described above, among others, Defendant Arrow Security discriminated against Ince by, *inter alia*, subjecting her to a hostile work environment because of her membership in a protected class.

102.    Defendant Arrow Security violated Title VII by subjecting Ince to this behavior based, in whole or in part, upon her membership in that protected class.

103.    As set forth in detail above and herein, Defendant Arrow Security discriminated against Ince and subjected her to adverse employment actions including, but not limited to, terminating her employment.

104.    As a direct and proximate result of Defendant Arrow Security's unlawful employment practices, Ince has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

105.    Accordingly, Defendant Arrow Security discriminated against Ince because of her gender, in violation of her rights under Title VII.

106.    Defendant Arrow Security's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

## NINTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
#### *Against Defendant Arrow Security*

107.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

108.    As set forth in detail above, Ince engaged in activity protected under Title VII.

109.    Defendant Arrow Security was aware that Ince opposed unlawful conduct and/or

asserted her rights under Title VII.

110.    Defendant Arrow Security, unlawfully and without cause, retaliated against Ince as a direct result of Ince asserting her rights under Title VII, and Ince suffered materially adverse employment actions as a result.

111.    As a direct and proximate result of Defendant Arrow Security's unlawful employment practices, Ince has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

112.    Arrow Security's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

113.    Accordingly, Arrow Security retaliated against Ince in violation of her statutory rights as guaranteed by Title VII.

**TENTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
***Against Defendant Arrow Security***

114.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

115.    The aforementioned facts and circumstances demonstrate that Defendant Arrow Security discriminated against Ince because she was a member of a protected class.

116.    Ince is a member of a protected class under the NYSHRL and was perceived by Arrow Security as such.

117.    As set forth in detail above and here, Arrow Security discriminated against Ince and subjected her to adverse employment actions.

118.    As a direct and proximate result of the unlawful employment practices of Arrow

Security, Ince has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

119.    Accordingly, Arrow Security discriminated against Ince because of her gender, in violation of her statutory rights as guaranteed by the NYSHRL.

**<u>ELEVENTH CAUSE OF ACTION</u>**
**(Retaliation in Violation of the NYSHRL)**
***Against Defendant Arrow Security***

120.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

121.    As set forth in detail above, Ince engaged in activity protected under the NYSHRL.

122.    Defendant retaliated by subjecting Ince to discrimination and adverse employment actions because of her protected activity in violation of Ince's statutory rights.

123.    Defendant was aware that Ince opposed unlawful conduct and asserted her rights under the NYSHRL.

124.    Ince has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

125.    Accordingly, Defendant retaliated against Ince in violation of her statutory rights as guaranteed by the NYSHRL.

**<u>TWELFTH CAUSE OF ACTION</u>**
**(Discrimination in Violation of the NYCHRL)**
***Against Defendant Arrow Security***

126.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

127.    The aforementioned facts and circumstances demonstrate that Defendant

discriminated against Ince because she was a member of a protected class.

128.    Ince is a member of a protected class under the NYCHRL and was perceived by Defendant as such.

129.    Defendant subjected Ince to adverse employment actions because of her gender.

130.    As a direct and proximate result of the unlawful employment practices of Defendant, Ince has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

131.    The conduct of Defendant has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

132.    Accordingly, Defendant discriminated against Ince because of her gender, in violation of her statutory rights as guaranteed by the NYCHRL.

## THIRTEENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against Defendant Arrow Security*

133.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

134.    As set forth in detail above, Ince engaged in activity protected under the NYCHRL.

135.    Defendant retaliated against Ince subjecting her to discrimination and adverse employment actions because of her protected activity in violation of the NYCHRL.

136.    Defendant was aware that Ince opposed unlawful conduct and/or asserted her rights under the NYCHRL.

137.    Defendant, unlawfully and without cause, retaliated against Ince as a direct result

of Ince asserting her rights and opposing unlawful conduct under the NYCHRL, which involved conduct reasonably likely to deter an individual from engaging in such protected activity.

138.    As a direct and proximate result of Defendant's unlawful employment practices, Ince has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

139.    The conduct of Defendant has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages. Accordingly, Defendant retaliated against Ince in violation of her statutory rights as guaranteed by the NYCHRL.

## FOURTEENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL and NYCHRL)
### *Against Defendant Bowen*

140.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

141.    Defendant Bowen aided, abetted, incited, compelled or coerced Arrow Security's unlawful conduct, including discrimination, against Ince by his conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

142.    Defendant Bowen was aware of his role as part of the unlawful activity and knowingly assisted Arrow Security in its violations of the NYSHRL and NYCHRL.

143.    As a direct and proximate result of Bowen's conduct, Ince has suffered and continues to suffer damages, including lost earnings and emotional distress.

144.    Defendant Bowen's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

**FIFTEENTH CAUSE OF ACTION**
**(Gender-Motivated Violence in Violation of the VGMVPL)**
***Against All Defendants***

145.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

146.    By subjecting Ince to nonconsensual sexual contact when he forcibly kissed, groped, and choked her, among other acts, Bowen committed a "crime of violence motivated by gender" under the VGMVPL.

147.    Defendant Bowen's sexual assault of Plaintiff presented a serious risk of physical injury to her.

148.    The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant subjected plaintiff to nonconsensual sexual contact. Gender animus inheres when consent is absent.

149.    Defendant Arrow Security enabled, participated in or conspired in Defendant Bowen's commission of a crime of violence motivated by gender.

150.    As a direct and proximate result of Defendants' conduct, Ince has suffered and continues to suffer damages, including lost earnings and emotional distress.

151.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

**SIXTEENTH CAUSE OF ACTION**
**(Assault)**
***Against Defendant Bowen***

152.    Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

153. By subjecting Ince to nonconsensual sexual contact when he forcibly kissed, groped, and choked her, among other acts, Bowen intentionally created a reasonable apprehension of imminent harmful or offensive contact in Ince.

154. The conduct of Defendant Bowen has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

## SEVENTEENTH CAUSE OF ACTION
### (Battery)
#### *Against Defendant Bowen*

155. Ince repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

156. By subjecting Ince to nonconsensual sexual contact when he forcibly kissed, groped, and choked her, among other acts, Bowen intentionally and unlawfully made physical contact with Ince without her consent.

157. The conduct of Defendant has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ince, entitling her to punitive damages.

## RELIEF

Plaintiff Kelcey Ince, on behalf of herself, the FLSA Collective Plaintiffs, and Class Members demands judgment in her favor and against Defendant Aron Security Inc. d/b/a Arrow Security as follows:

A. A declaratory judgment that the actions of Defendant complained of violate the FLSA, NYLL, Title VII, NYSHRL, NYCHRL and the VGMVPL;

B. An injunction and order permanently restraining Defendant from engaging in any

such further unlawful conduct;

C.      An award of damages against Defendant, in the amount of unpaid overtime compensation and liquidated damages as provided by the FLSA and NYLL for overtime violations;

D.      An award of damages against Defendant, in the amount of unpaid wages and liquidated damages as provided by the FLSA and NYLL for wage violations;

E.      An award of damages against Defendant, in the amount of unpaid wages, liquidated damages, and civil penalties as provided by the FLSA and NYLL for retaliation;

F.      An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

G.      An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for emotional distress;

H.      An award of punitive damages, in an amount to be determined at trial;

I.      Prejudgment interest on all amounts due;

J.      An award of reasonable attorneys' fees and costs to the fullest extent permitted by law; and

K.      Such other and further relief as the Court may deem just and proper.

Plaintiff Kelcey Ince demands judgment in her favor and against Defendant Mark Bowen as follows:

A.    An injunction and order permanently restraining Defendant from engaging in any such further unlawful conduct;

B.    An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate for all monetary and/or economic damages;

C.    An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for emotional distress;

D.    An award of punitive damages, in an amount to be determined at trial;

E.    Prejudgment interest on all amounts due;

F.    An award of reasonable attorneys' fees and costs to the fullest extent permitted by law; and

G.    Such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff Kelcey Ince, on behalf of herself, the FLSA Collective Plaintiffs, and the Class Members demands a trial by jury on all issues so triable of right.

Dated:  May 3, 2025
   New York, New York

              **RISSMILLER PLLC**

       By:  */s/ Alex Rissmiller*
           Alex Rissmiller
           Jazly Liriano
           5 Pennsylvania Plaza, 19th Floor
           New York, NY 10001
           T: (646) 664-1412
           arissmiller@rissmiller.com
           jliriano@rissmiller.com

           *Attorneys for Plaintiff Kelcey Ince*